289 So.2d 318 (1973)
Mrs. Ruby HERNANDEZ, Indiv., etc.
v.
Danny E. TONEY et al.
No. 9656.
Court of Appeal of Louisiana, First Circuit.
December 17, 1973.
Rehearing Denied February 11, 1974.
*319 J. Glen Dupree, Baton Rouge, for Herschel Adcock.
Ben W. Lightfoot, Baton Rouge, for Fed. Ins. Co. & Northwood Place Corp.
James A. George, Baton Rouge, Charles L. Miller, Baton Rouge, for Erroll Whatley, Jr.
Jack N. Dyer, Baton Rouge, for Danny Toney.
Before SARTAIN, LANDRY and WATSON, JJ.
WATSON, Judge.
This action was brought by plaintiff, Mrs. Ruby Hernandez, individually, and as tutrix of her minor son, Chris Hernandez, to recover medical expenses and damages resulting from an accident on February 11, 1970. The facts of the accident are relatively undisputed and can be summarized as follows:
Mrs. Hernandez and her children lived in Northwood Place, an apartment complex located on the Mohican-Prescott Crossover Road in Baton Rouge. The complex consisted of five separate buildings with a fenced playground located near the resident manager's apartment-office for the use of the entire complex. On the date of the accident, Chris, then five or six years of age, asked his mother to take him to the playground. Mrs. Hernandez was preparing to fix supper and instructed an older son, Gregory, aged thirteen, to take Chris to the playground. She instructed Chris not to leave the playground until someone came for him. Mrs. Hernandez testified that Chris was not allowed to go the playground alone because it entailed crossing a driveway. Gregory left Chris in the fenced playground. Shortly thereafter, Robert Bowman, the resident manager, while standing on the balcony of his apartment-office, saw dirt thrown at his young daughter; he told Chris to leave the playground area, "... for throwing dirt, arguing with the other kids ..." (TR. 90). Mr. Bowman did not escort Chris back to his apartment nor did he inform Mrs. Hernandez that her son was no longer in the playground. Chris testified that he did not go home because he was afraid of what his mother would do to him for returning without an escort, contrary to her instructions. Chris and a friend then took a toy car to the parking lot.
*320 While being pushed in the toy car by his friend, Chris was struck by an automobile.
The evidence is conflicting as to how much time elapsed between Chris leaving the playground and the accident. Mrs. Hernandez felt that it was from ten to fifteen minutes and Mr. Bowman felt that it was at least thirty minutes. The time difference between ten and thirty minutes does not seem significant. In any event, Mr. Bowman, who gave the longer estimate, testified he was not "... real sure ..." about the time. (TR. 215).
Named as defendants were Danny E. Toney, the driver of the car which struck Chris; Errol R. Whatley, Jr., the owner of the apartment building in which Mrs. Hernandez and Chris lived and that in which the resident manager lived; Northwood Place Corporation, the owner of an apartment building across the street; and Federal Insurance Company, the insurer of the building owned by Northwood Place Corporation.
Aetna Insurance Company insured the building, 4151 Mohican-Prescott Crossover Road, where Chris and his mother lived, under multi-peril policy number MP 63 10 75, issued to "Errol R. Whatley D/B/A Northwood Place Apartments." It was stipulated that apartment buildings three and four both had municipal number 4151. American Motorists Insurance Company insured the building, 4115 Mohican-Prescott Crossover Road, where manager Bowman lived, adjacent to the playground, under liability policy number OHMOO7153, issued to "Errol R. Whatley, Jr. D/B/A Northwood Place Apartments." It was stipulated that apartment buildings one and two both had municipal number 4115.
Aetna Insurance Company and American Motorists Insurance Company were not named as defendants. American Motorists Insurance Company did not elect to defend the suit in behalf of their insured, Errol R. Whatley, Jr. D/B/A Northwood Place Apartments, as to the premises at 4115.
The trial court correctly stated the legal questions involved:
"The general rule, however, is that a person who undertakes the control and supervision of a child has the duty to use reasonable care commensurate with the reasonably foreseeable risks of harm. The acts of Mr. Bowman must therefore be analyzed in this context. Although under no duty or obligation to do so, he did in fact supervise and undertake a degree of control over Chris Hernandez. Whether his action in ordering the young six-year old from a position of safety in the enclosed playground without informing the mother or bringing the child to the mother amounts to a deviation from the standard of reasonable care presents a rather close question. Assuming with reservation that Bowman's action amounted to negligence, the matter that is determinative of the crucial issue in the case can be reached. That is, whether such negligence was the proximate cause of Chris Hernandez's injuries." (TR. 62).
The trial court then found that: any negligence on the part of the apartment manager was too far removed in point of time from the accident; there was no duty-risk relationship; the accident was not reasonably foreseeable; and it was caused by intervening acts and circumstances. Therefore, the trial court dismissed plaintiff's suit. Plaintiff has appealed from this judgment.
We believe the foregoing legal conclusions by the trial court to be erroneous.
There is no question that one factor in Mr. Bowman's action was parental anger at dirt being thrown in the face of his small daughter. His lack of concern for Chris is evidenced by the fact that he testified he watched Chris leave the playground, not to make sure that he was returning home, but in order to make certain that he did not return to the playground. While Mr. Bowman undoubtedly had reason *321 for his indignation, it is well settled that a child of five or six years of age cannot be guilty of contributory negligence. Jackson v. Jones, 224 La. 403, 69 So.2d 729 (1953). The responsibility for the accident cannot be placed on Chris, who acted in the normal fashion of a heedless child, or on defendant, Danny E. Toney, who could not foresee the presence of a child in the parking lot.
In looking at the conduct of Mrs. Hernandez, we find that it was reasonable and, in fact, that of a protective mother. A mother is not required to watch a child at all times. Having Chris escorted to and from the fenced playground, while impressing upon him that he was not to leave the fenced area alone, shows a high standard of care on her part. Smolinski v. Taulli, La., 276 So.2d 286 (1973).
The question then becomes: was Mr. Bowman guilty of negligence toward the child? "Actionable negligence results from the creation or maintenance of an unreasonable risk of harm to others." Smolinski v. Taulli, supra, at 288. When Mr. Bowman undertook control and supervision of Chris, he assumed the duty to use reasonable care to protect the child from injury. Whitney v. Southern Farm Bureau Casualty Ins. Co., 225 So.2d 30 (La.App.3 Cir. 1969). Mr. Bowman breached this duty by ordering Chris from the fenced playground without escorting him the short distance to his home or notifying his mother that he was no longer in the playground. Unquestionably, the playground area was fenced to protect the children living in the apartments from the hazards of traffic to which they would otherwise have been exposed. We do not believe Mr. Bowman acted reasonably in ordering Chris from a protected area and giving no further thought to his safety. What happened to Chris was exactly what one could have expected to happen; Mr. Bowman could easily have foreseen the result of his action. Llorens v. McCann, 187 La. 642, 175 So. 442 (1937). It is particularly surprising that Mr. Bowman, the father of a small child and thus presumably versed in the behavior of children, could have behaved in such a negligent way in regard to Chris Hernandez.
The time factor, stressed by the trial court, does not seem material to a decision of this matter. The interval in question, whether ten or thirty minutes, was not long enough to place Mrs. Hernandez on notice that her son was no longer in the playground.
The rationale of the trial court's decision is the doctrine of passive negligence, placing undue emphasis on the chronology of negligent acts in finding an intervening cause to be the sole proximate cause of an accident. As the Supreme Court of Louisiana pointed out in both Jackson v. Jones, supra, and, more recently, in Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), intervening negligence or an intervening cause does not necessarily relieve another wrongdoer in the chain of events of liability. Even if the driver of the car was negligent, and the evidence does not establish that he was, Mr. Bowman's negligence put Chris in his position of peril and was a substantial factor or cause-in-fact of the accident. As to Bowman,
"... the criterion governing liability is whether the person creating the danger could or should reasonably have foreseen that the accident might occur. If such were the case, then he is liable notwithstanding the intervening cause." Jackson v. Jones, supra, 69 So.2d at 733.
Applying this criterion, we have no hesitation in finding Bowman negligent and this negligence a proximate cause of Chris' accident.
As Mr. Whatley admitted, both in the pleadings and on the trial of this matter, Mr. Bowman was acting within the scope of his authority as manager of the apartments *322 in his action with respect to Chris, and his negligence is thus attributable to defendant Whatley.

QUANTUM
Dr. A. Sterling Albritton, an expert in the field of pediatrics and general medicine, testified that he examined Chris Hernandez on February 11, 1970, at the Baton Rouge General Hospital. At that time, Chris had his skull x-rayed. Dr. Albritton called a plastic surgeon to take care of a laceration on his cheek and a neurosurgeon to care for his skull fracture. No detailed examination was made of his problems with his teeth at that time.
Dr. Joseph M. Edelman gave Chris an electroencephalogram on March 26, 1970. His diagnostic impression was that Chris had a "drowsy EEG" (P-1).
Dr. Richard W. Hughes, a plastic and reconstructive surgeon, testified that he saw Chris on February 11, 1970, with "... a severe, through and through laceration of the right lower lip and a laceration of the right cheek." (TR. 97). Dr. Hughes testified that he closed the laceration with an excellent result, leaving "... a two-inch scar running from the margin of the right lower lip, downward to the right," (TR. 98) approximately a sixteenth of an inch wide with slightly darker pigmentation than the surrounding skin. There is also a faint one inch to three-quarter inch scar on the right cheek. He testified that Chris might suffer some loss of feeling toward the center of the lip and that this condition would be permanent.
Dr. J. Rivers Wall, Jr., an expert witness in the field of oral surgery, testified that he saw Chris on March 10, 1970, at the request of his orthodontist, Dr. Murry Decoteaux. Dr. Wall testified that Chris was missing fifteen primary or baby teeth when he saw him; two teeth were congenially absent. He felt that treatment should consist of a prosthesis to replace the primary teeth for two reasons: one, chewing; two, to maintain proper spacing of the permanent teeth. Otherwise, the teeth would drift all over the mouth. Some might become impacted in the mandible which would prevent normal jaw development and require extensive orthodonture and surgery to correct. Dr. Wall said that Chris was unable to chew and to digest his food as he normally would or should, having only one upper and one lower tooth hitting. Dr. Wall testified that the prostheses would have to be replaced from time to time until Chris reached age twelve.
Dr. E. D. Bateman, Jr., an expert in the field of orthodonture, testified that he examined Chris on January 20, 1972, and on January 22, 1972. Dr. Bateman testified that Chris had a diastema or space between his central incisors; an open bite or malocclusion; premature migration of his permanent molars; and insufficient arch space; all of which could be and Dr. Bateman felt were related to the premature loss of his baby teeth. He testified that treatment for Chris should first consist of lingual arches or sophisticated space maintainers. These lingual arches would be necessary until Chris was eleven or twelve and would have to be checked every three months during that time. After removal of the lingual arches, there is a strong probability that Chris would have to have four permanent teeth removed; he would then require a minimum of two years in active treatment and a year in retentive appliances or treatment from the age of twelve until the age of fifteen. The initial treatment would cost approximately $150.00 to $200.00 and the later treatment from $1,250.00 to $1,500.00. Dr. Bateman testified that the missing teeth caused Chris to have difficulty in proper chewing and digestion of his food.
Mrs. Hernandez testified that Chris was unable to take anything in his mouth larger than a straw for the first two weeks after his accident. Then, for ten or twelve months, he had only two teeth that met and had to live on soft foods; custard, *323 baby food, mashed potatoes. Mrs. Hernandex related Chris' initial school experiences in September following the accident. She said that Chris cried because the other children made fun of him for looking like a little old man without any teeth. This period of acute unhappiness only lasted about two weeks, but he was unable to eat the school lunches for some time after that. The numbness in Chris' lip caused him to spit up during the night and sometimes when he was drinking from a glass.
Chris' past medical expense was stipulated as being $761.12. His future medical expense was estimated by Dr. Bateman at between $1,400.00 and $1,700.00. We believe that the inflationary tendency of our economy would dictate adopting the figure of $1,700.00.
For Chris' past, present and future pain and suffering, disabilities and physical scars; we award the sum of $7,500.00.
Since we have determined that the negligence of Robert E. Bowman, the manager of the apartments, can be imputed to his principal, Errol R. Whatley, Jr., in the of the apartments, the decision of the trial court is reversed as to the defendant, Errol R. Whatley, Jr.
As to defendants, Northwood Place Corporation, Federal Insurance Company and Danny E. Toney, the decision of the trial court dismissing plaintiff's petition is affirmed.
It is therefore ordered, adjudged and decreed that there be judgment herein in favor of plaintiff-appellant, Mrs. Ruby Hernandez, as tutrix of her minor child, Chris Hernandez, and against the defendant-appellee, Errol R. Whatley, Jr., in the sum of $9,961.12.
All costs, including costs of this appeal, are assessed against defendant, Errol R. Whatley, Jr.
Affirmed in part, reversed in part and rendered.