809 So.2d 159 (2001)
John SMITH and Marie Smith
v.
Lori ROUSSEL, Nolan Roussel and Allstate Insurance Company.
No. 2000 CA 1028.
Court of Appeal of Louisiana, First Circuit.
June 22, 2001.
Rehearing Denied August 23, 2001.
*162 Maurice J. LeGardeur, Jr., Covington, Counsel for John Smith and Marie Smith Plaintiff-Appellee.
James S. Rees, III, Covington, Counsel for Allstate Insurance Company Defendant-Appellant.
William R. Alford, Jr., Covington, Counsel for Dr. Richard Celentano.
Before: WHIPPLE, KUHN, and DOWNING, JJ.
DOWNING, Judge.
This appeal involves an insurance coverage dispute between Allstate Insurance Company, defendant-appellant, and John and Marie Smith, plaintiff-appellees. The Smiths filed a suit against Lori and Nolan Roussel and their insurer, Allstate, alleging among other things that they were injured as a result of the Roussels' negligence in misrepresenting the nature and temperament of the horse the Smiths bought from them. The Roussels were ultimately dismissed from the litigation,[1] but the suit continued against Allstate directly. The trial court ruled that the Roussels did not intend to harm the Smiths and that Allstate was liable for the injuries caused to John Smith by the horse they purchased from the Roussels.
Allstate appeals the trial court decision. For reasons stated, we affirm.

FACTS
On September 17, 1995, the Roussels sold a Tennessee Walking horse named Stepper to Marie and John Smith. The Smiths alleged that the Roussels represented Stepper as having a calm and gentle nature, but, shortly after the sale, Stepper was discovered to be a spooky and skittish beast. The Smiths tried to return Stepper, but the Roussels refused to take him back, and after much negotiation, it was agreed that Stepper would be put on the auction block.[2] On October 7, 1995, less than three weeks after the purchase, John Roussel suffered a hand injury while trying to unload Stepper from a horse trailer at the livestock sale where he was to be auctioned off. On December 7, 1995, the Smiths filed suit against the Roussels and their homeowner's insurer, Allstate. The matter was tried August 30, 1999. The Roussels were dismissed during the trial without objection by Allstate. The trial court found in favor of the Smiths and against Allstate and awarded damages in the amount of $15,000 in general damages and $10,800 in medical expenses.

ASSIGNMENTS OF ERROR
Allstate alleges that the trial court erred in the following:
1. By not finding that the "intentional acts" exclusion of the Roussels' *163 homeowner policy with Allstate barred recovery.
2. By finding that the Roussels were negligent and thereby allowing plaintiffs to recover under their Allstate homeowner's policy.
3. By not finding that Mr. Smith was at least comparatively negligent.
John and Marie Smith allege the following assignments of error in their answer to appeal:
I. The trial court abused its discretion by miscalculating the general damage award.
II. The trial court abused its discretion by failing to award Mrs. Smith damages for loss of consortium.

DISCUSSION

INTENTIONAL ACTS EXCLUSION
Allstate claims that the homeowner's policy does not cover this loss which allegedly resulted from lies the Roussels told the Smiths enticing them to buy the horse. Allstate claims that these lies constitute intentional acts which are thus excluded under the policy.
The policy provides the following language concerning coverage:
Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and covered by this part of the policy.
The policy defines occurrence as follows:
"Occurrence"means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, during the policy period, resulting in bodily injury or property damage.
Allstate does not contest on appeal that Smith's injuries qualified as an occurrence under the policy. Rather, it claims the following exclusion applies to preclude its liability to the Smiths:

LOSSES WE DO NOT COVER UNDER COVERAGE X:
1. We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
a. such insured person lacks the mental capacity to govern his or her own conduct.
b. such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
c. such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.
Allstate argues that there is a well established public policy against allowing a person in insure himself against his own intentional acts causing injury to others, citing Williams v. Diggs, 593 So.2d 385, 387 (La.App. 1st Cir.1991). Allstate claims the Roussels intentionally misled the Smiths into buying the horse. Specifically, Allstate alleges the Roussels described Stepper's nature as being quiet and docile when in fact he was dangerous and unpredictable. Allstate contends that this intentional misrepresentation is what led to Smith's injury, and this act is not covered by the homeowner's policy.
*164 Although "fraud" is never specifically alleged in the petition, it is the underlying intentional tort to which Allstate alludes.[3] Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. C.C. art. 1953. Fraud, however, cannot be predicated on mere mistake or negligence, however gross, and it is generally held that fraudulent intent, intent to deceive, or equivalent thereof is an essential element of fraud. Bass v. Coupel, 93-1270, p. 5 (La.App. 1st Cir.6/23/95), 671 So.2d 344, 347.
The existence of fraud is a question of fact. Coffey v. Block, 99-1221, p. 7 (La.App. 1st Cir.6/23/00), 762 So.2d 1181, 1186, writ denied, 2000-2226 (La.10/27/00), 772 So.2d 651. A trial court's determination of fraud or its absence is a question of fact that will not be disturbed on appeal absent manifest error. See Harmon v. Schamberger, 536 So.2d 579, 581 (La.App. 1st Cir.1988).
In its brief, Allstate points to two alleged misrepresentations among other general allegations of mendacity. Marie Smith alleges Lori Roussel told her Stepper was a kind, docile, gentle horse. Marie Smith also alleges Lori Roussel said she was selling the horse because it was "too quiet" and she wanted a horse with more spirit for barrel racing.
While the evidence reveals Stepper is a skittish and high-spirited animal, there is no evidence that he had a violent temperament or overly aggressive nature. We cannot say the trial court was manifestly erroneous when it determined from this evidence and other contradictory evidence in the record that the insurance policy exclusion for intentional acts was inapplicable in this case. Thus, this assignment of error is without merit.

NEGLIGENCE OF THE ROUSSELS
In support of their second assignment of error, Allstate maintains that if the trial court believed that the Roussels' testimony was credible, then no negligence was proven and they should not have been found liable for plaintiffs injuries. Allstate seems to be arguing that to accept any part of the Roussels' testimony, the court must accept all of the Roussels' testimony and none of the Smiths'. However, a trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Scoggins v. Frederick, 98-1814, 98-1815, 98-1816, p. 15 (La.App. 1st Cir.9/24/99), 744 So.2d 676, 687, writ denied, XXXX-XXXX (La.3/17/00), 756 So.2d 1411. Further, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, reasonable inferences of fact should not be disturbed on appeal. Id.
In Louisiana, negligent misrepresentation cases are evaluated using the duty-risk analysis. Daye v. General Motors Corporation, 97-1653, p. 7 (La.9/9/98), 720 So.2d 654, 659. The duty-risk analysis is employed on a case-by-case basis. Plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of *165 harm was within the scope of protection afforded by the duty breached. Id.
We now turn to this analysis.

A. Cause-in-fact
The inquiry here is whether the accident would have occurred but for the defendant's alleged substandard conduct or, when concurrent causes are involved, whether defendant's conduct was a substantial factor in bringing about the accident. Here, the inquiry is whether John Smith would have suffered injury had not Lori Roussel made or omitted representations about Stepper.
Marie Smith testified she would not have bought Stepper had Lori Roussel not represented his nature as being calm and gentle. Marie Smith testified that she knew the qualities she wanted in a horse and made specific inquiries about Stepper's temperament. Marie Smith asserts she would not have bought Stepper had she been informed of his high-spirited nature. Had Marie Smith not bought Stepper, John Smith would not have been hurt trying to sell him.
Thus, the record reasonably supports a conclusion that Lori Roussel's representations and failure to disclose Stepper's highspirited nature were a cause-in-fact of John Smith's injuries.

B. Duty
To prevail in an action for negligent misrepresentation, a plaintiff must prove that the defendant had a duty to supply correct information. Duplechin v. Adams, 95-0480, p. 6 (La.App. 1st Cir.11/9/95), 665 So.2d 80, 84, writ denied, 95-2918 (La.2/2/96), 666 So.2d 1104. Whether a duty is owed is a question of law. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1015 (La.1993).
"The principal juridical element of an action in negligence is a duty, apparent to reason and common sense, to avoid acts and omissions which engender an unreasonable risk of harm to others." Stephens v. State, Through Dept. of Transp., 440 So.2d 920, 925 (La.App. 2nd Cir.1983), writ denied, 443 So.2d 1119 (La.1984). By Lori Roussel's own testimony, she knew of Stepper's high-spirited and skittish nature. She knew Stepper did not like being tied down and that he would buck and jerk his head so strongly that he would straighten tie rings or pop halter ropes. She knew someone could be hurt if they were standing too close and not expecting this behavior. She knew she should not sell Stepper to someone who could not properly handle him. She knew that someone in their sixties who had been ill might be injured in handling a high-spirited horse. She acknowledged that a skittish horse with tendencies to shy or jump should not be sold to someone old or who had undergone surgeries. She further acknowledged her fears that someone could be hurt by such a horse. She knew Stepper had needed to be tranquilized at times.
Here, the trial court apparently accepted the Smith's account of Lori Roussel's representations made in her attempt to sell Stepper. Marie Smith says she explained clearly her need for a gentle, docile animal for her and her grandchildren to ride. The record supports a conclusion that Lori Roussel's acts or omissions engendered an unreasonable risk of harm to others and a conclusion that she had a duty to provide correct information about Stepper. See also Anderson v. Heck, 554 So.2d 695, 705 (La.App. 1st Cir.1989), cert. denied, 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990), where this court ruled a seller had a duty to provide correct information to a purchaser if the seller had a pecuniary interest (that need not be direct or immediate) in the transaction.
*166 The trial court also had a reasonable basis to conclude the Roussels had a duty to warn the Smiths of Stepper's nature and characteristics. "The duty to warn applies to `any danger inherent in the normal use of the product which is not within the knowledge of an ordinary user.'" Simeon v. Doe, 618 So.2d 848, 852 (La.1993).

C. Breach of Duty
The record supports the conclusion that the Roussels did not provide the correct information they were duty bound to provide the Smiths. Even in the most favorable light, Lori Roussel only told the Smiths that Stepper was high-spirited when she knew the horse could be dangerous and unsuitable for the Smiths' stated purposes.
Allstate argues, however, that even if a general duty exists, no breach exists where the injured party is a "sophisticated user" or where the dangers are "obvious to the ordinary user," citing Johnston v. Hartford Insurance Co., 623 So.2d 35 (La.App. 1st Cir.), writ denied, 626 So.2d 1170 (La. 1993). While this is a correct statement of law, the record supports a finding that the Smiths were not "sophisticated users" and a finding that the dangers were not obvious.
Marie Smith testified that she had been riding since she was three-years-old but that she had always had "very good" horses. She was experienced in loading and unloading horses. John Smith, testified that he also was an experienced horseman who had bred and shown horses. He testified that he had loaded and unloaded 90 to 100 horses but had never seen a horse back out of the horse trailer faster or more forcefully than Stepper did, giving no indication of his intended movement. He further testified Stepper's backing out with such speed and force was not normal.
Nothing in the record shows the Smiths had any special experience or sophistication in dealing with a horse like Stepper. Further, nothing in the record shows Stepper's propensities toward bolting and jerking were obvious when the Smiths bought him.

D. Risk of Harm/Scope of Protection
There is no "rule" for determining the scope of the duty owed. It is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Roberts v. Benoit, 605 So.2d 1032, 1044 (La.1991). In determining the limitation to be placed on liability for a defendant's substandard conduct, the proper inquiry is how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone. Absent an ease of association between the duty breached and the damages sustained, there is no legal fault. Roberts v. Benoit, 605 So.2d at 1045.
Here, there is great ease of association between Lori Roussel's failure to give complete information to the Marie Smith, warning of Stepper's dangerous propensities, and the resulting harm to John Smith. It is highly foreseeable that someone riding, training, or loading or unloading Stepper from a horse trailer might be hurt.
Here, the record supports a conclusion that the risk of harm fell within the scope of protection afforded by the duties to give correct information and to warn.

Summary
The record in this matter reasonably supports the trial court's conclusion that Allstate is liable to the Smiths. The insurance policy at issue provides that Allstate will pay damages which an insured person *167 becomes legally obligated to pay as a result of an occurrence. Allstate has failed to establish any exclusion to coverage under the policy. The trial court was not manifestly erroneous in ruling John Smith's damages were covered under Allstate's policy. Therefore, there is no merit in Allstate's second assignment of error.

COMPARATIVE NEGLIGENCE
The trial court found that "there was no comparative fault on behalf of John and Marie Smith." Allstate's third assignment of error alleges the trial court erred by failing to find John Smith comparatively, if not completely, at fault under the facts and evidence. We disagree.
Allstate suggests we apply the five criteria set forth in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985) in apportioning fault between Allstate and the Smiths. Before we apportion fault, however, we must find some fault attributable to the Smiths since the trial court made a specific finding that the Smiths were not at fault. We observe that, "[t]he allocation of a particular percentage of fault to a party is a finding of fact." Babin v. Burnside Terminal, Greater Baton Rouge Port Commission, 577 So.2d 90, 99 (La.App. 1st Cir.1990). On review, an appellate court will not reverse a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
The record supports the trial court's finding that John Smith was not negligent in causing his own injuries. He was injured while unloading Stepper for sale less than three weeks after his wife bought the horse. He was using ordinary care in trying to unload Stepper from the horse trailer when his finger was broken. He was wearing appropriate gloves. He had enlisted the aid of others to provide help. He was experienced in loading and unloading horses and was following apparently proper unloading procedures when Stepper backed out of the trailer with abnormal speed and force, not giving him time to let the lead rope loose. He testified he was watching carefully, but Stepper gave no sign or indication, as is normal with horses, that he was about to bolt. It is a reasonable conclusion that John Smith was hurt, not for any want or lack of skill or care, but from his necessary proximity to Stepper while trying to unload him for sale on the auction block. We cannot say the trial court was manifestly erroneous in finding no fault in the Smiths. This assignment of error is without merit.

GENERAL DAMAGE AWARD
The Smiths raise their first assignment of error on answer to appeal alleging the trial court's award of general damages in the amount of fifteen thousand dollars ($15,000.00) for John Smith's injured little finger is abusively low when special damages are awarded in the amount of ten thousand eight hundred dollars ($10,800). We disagree.
The trier of fact has much discretion in the assessment of damages. La. C.C. art. 2324.1. A reviewing court should not set aside an award of general damages, unless an analysis of the facts and circumstances reveals an abuse of the factfinder's discretion in setting the award. Smith v. Goetzman, 97-0968, p. 14 (La.App. 1st Cir.9/25/98), 720 So.2d 39, 47. The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury, to the particular plaintiff, under the particular circumstances, that the appellate court *168 should increase or reduce the award. Youn v. Maritime Overseas Corporation, 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). However, when the factfinder abuses its discretion by rendering an excessive or inadequate quantum decision, the appellate court merely raises the factfinder's inadequate award to the lowest reasonable amount or reduces the factfinder's excessive award to the highest reasonable amount. Andrus v. State Farm Mutual Automobile Insurance Company, 95-0801, p. 10 (La.3/22/96), 670 So.2d 1206, 1211.
Looking at the specific facts of this case, we find no abuse of discretion. John Smith did suffer a compound fracture to his left little finger which required surgery. He suffered attendant pain and discomfort. The record contains evidence that Mr. Smith has lost some use of the little finger on his left hand, although there is evidence that he had also injured that finger many years prior. Mr. Smith is right handed. As of the time of trial John Smith complained that his hand still swelled up on occasion. He testified to some difficulty in gripping and in holding onto small objects. He also testified that there was nothing he was unable to do that he could do before, he just "can't do it as fast and as well."
Under these circumstances, we cannot say an award of general damages in the amount of fifteen thousand dollars ($15,000.00) for John Smith's injured little finger is abusively low, though this award does seem on the low side. Despite the Smiths' arguments, there is no legal correlation of which we are aware between the amount of special damages and the award of general damages.
Even so, our review of the cases reveal that an award of fifteen thousand dollars ($15,000.00) is within the range of appropriate awards for injuries to fingers, e.g., Brown v. Sears, Roebuck & Co., 514 So.2d 439 (La.1987), where a two year old boy suffered a similar finger injury and surgery and was awarded $3,000.00 in general damages with medical bills of $4,100.00 and Johnson v. Phillips, 544 So.2d 600 (La.App. 1st Cir.1989) where thumb surgery and five percent permanent impairment to a hand resulted in a general damage award of $7,500.00 with medical bills of $1,900.00. Even considering inflation, the general damage award to the Smiths is within the permissible range.
Therefore, this assignment of error is without merit.

LOSS OF CONSORTIUM
In their second assignment of error raised by answer to appeal, the Smiths allege the trial court erred in failing to award any damages to Marie Smith for loss of consortium. In its judgment, the trial court failed to address the issue of loss of consortium, even though it was fully litigated. "Ordinarily, where a judgment is silent as to a part of a demand or any issue that was litigated, that issue or demand is deemed rejected." Best Fishing, Inc. v. Rancatore, 96-2254, p. 5 (La.App. 1st Cir.12/29/97), 706 So.2d 161, 163. The trier of fact's conclusion regarding loss of consortium is an issue of fact which cannot be disturbed on appeal unless "clearly wrong." Billiot v. K-Mart Corp., 99-1569, p. 8 (La.App. 1st Cir.6/23/00), 764 So.2d 329, 334, writ denied, 2000-2211 (La.10/13/00), 771 So.2d 653. We, therefore, review the record to determine whether the trial court was clearly wrong in failing to award any damages for loss of consortium.
"Consortium" means much more than sexual relations. The term also includes love and affection, society and companionship, support, aid and assistance, felicity, and performance of material services, e.g., uncompensated work around *169 the home. La. C.C. art. 2315; Smith v. Davill Petroleum Company, Inc., 97-1596, p. 11 (La.App. 1st Cir.12/09/98), 744 So.2d 23, 30-31.
Marie Smith testified that her relationship with her husband suffered immediately after the accident and that she felt guilty because she had bought the horse that caused his injury. The record reflects that John Smith took about three months to substantially rehabilitate. During this period, Marie Smith had to help her husband bathe. She also assumed primary responsibility for preparing their farm and animals for winter with the help of her daughter and son-in-law. Both John and Marie Smith were retired at the time of the accident.
While an award for loss of consortium may have been appropriate, we cannot say the trial court was clearly wrong in failing to make such award. In rejecting Marie Smith's claim for loss of consortium, the trial court apparently chose not to credit the Smiths' testimony. When findings of fact are based on evaluations of witness credibility, the clearly wrong standard of review requires that great deference be afforded the trier of fact's findings. Billiot v. K-Mart Corp., p. 8, 764 So.2d at 334. Given the relatively short duration of John Smith's incapacity, the lack of specific evidence concerning the extra duties Marie Smith assumed around the farm, and minimal harm to her pecuniary interests, we cannot say the trial court was manifestly erroneous in failing to award any damages for loss of consortium. This assignment of error is, therefore, without merit.

CONCLUSION
For reasons stated, the judgment of the trial court is affirmed. Costs are taxed to Allstate Insurance Company.
AFFIRMED.
KUHN, J., concurs and assigns reasons.
KUHN, J., concurring.
In Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 881-82 (La.1993), our supreme court, quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990), instructed:
if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
And it is only:
where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness... in a finding purportedly based upon a credibility determination.
Stobart, 617 So.2d at 882.
As duly-noted by the majority, a trier of fact is free to accept in whole or part the testimony of any witness. Scoggins v. Frederick, 98-1814, 98-1815, 98-1816, p. 15 (La.App. 1st Cir.9/24/99), 744 So.2d 676, 687, writ denied, XXXX-XXXX (La.3/7/2000), 756 So.2d 1141.
The majority has articulated the only factual basis which may be strained from the entirety of the evidence that is not manifestly erroneous. There are no documents or objective evidence to contradict defendants' testimony regarding the nature and demeanor of Stepper. And the Roussels did not iterate various versions about their knowledge of Stepper's nature and demeanor such that their story can be characterized as "internally inconsistent or *170 implausible on its face." I believe the factual basis set forth by the majority, which is fashioned by the acceptance and rejection of parts of the testimony of the witnesses, expresses the outermost perimeter that an appellate court may construe as "reasonable." Thus, under Stobart, we are required to affirm the trial court, and I must concur.
NOTES
[1] The record reflects that the Smiths stipulated they would dismiss the Roussels and proceed only against Allstate. The record further reflects that Allstate refused to defend the Roussels in this lawsuit.
[2] The Roussels agreed to reimburse the Smiths for half of the loss if Stepper were sold at auction.
[3] When evaluating whether a party can recover for an intentional tort, "a court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether he has proved his cause of action and damages recoverable thereunder." Caudle v. Betts, 512 So.2d 389, 391 (La.1987).