837 So.2d 678 (2002)
Carrie WHITEHEAD and State Farm Mutual Automobile Insurance Company
v.
AMERICAN COACHWORKS, INC.
No. 2002 CA 0027.
Court of Appeal of Louisiana, First Circuit.
December 20, 2002.
Rehearing Denied February 19, 2003.
*679 John T. Roethele, Denham Springs, Counsel for Plaintiffs/Appellees Carrie Whitehead and State Farm Mutual Automobile Insurance Company.
*680 Lee Herrington, Baton Rouge, Counsel for Defendant/Appellant American Coachworks, Inc.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
American Coachworks, Inc. (American Coachworks) appeals a trial court judgment in favor of State Farm Mutual Automobile Insurance Company (State Farm). Following our review of the facts and law, this court affirms in part, reverses in part, and renders in part.

FACTUAL AND PROCEDURAL DEVELOPMENT
On June 30, 1997, Carrie Whitehead Fontenot was involved in a vehicular accident. Carrie, who was eighteen at the time of the incident, and her mother, Pamela Chapman Whitehead, arranged to have the 1995 Mazda Protégé LX towed to American Coachworks, a repair shop with a towing service. Prior to towing the vehicle, Carrie was required to sign a form entitled "Authorization to Repair." It is undisputed that there was a verbal understanding at that time between John and Ann Spinks, who own American Coachworks, and the Whiteheads that the Whiteheads desired to have the vehicle declared a total loss. American Coachworks was not to begin repairs pending State Farm's appraisal.
Following an inspection by Rickey Vincent of State Farm on July 7, 1997, State Farm issued an estimate of $2,614.74 as the sum to repair the vehicle. State Farm's July 9, 1997 letter to Carrie read: "Enclosed is a copy of your estimate. Please take the estimate and your vehicle to the shop of your choice and authorize the shop to repair your vehicle." It is not disputed that the initial estimate was woefully inaccurate.
Communication between Mrs. Whitehead and State Farm continued, but no revision to the initial estimate was made during the two and one-half weeks following the incident. In a letter dated July 18, 1997, American Coachworks sent State Farm an eight-page "Notice of Deficiency in Insurance Estimate," estimating repair costs at $9,194.98. The notice was faxed to State Farm on Sunday, July 20, 1997. The original letter was received in the mail at State Farm's claims office on July 24, 1997. Three weeks after storing the vehicle on its premises, on July 22, 1997, American Coachworks ordered parts to begin repairs on the vehicle pursuant to State Farm's initial estimated cost. This was the same date that American Coachworks had mailed the deficiency notice. Subsequently, on July 24, 1997, Bill Lea, another claims representative for State Farm, performed another inspection of the vehicle for State Farm. State Farm issued a revised estimate to repair the vehicle for the increased sum of $5,658.43 on July 25, 1997.
Finally, on July 29, 1997, more than four weeks after the incident, State Farm conceded that the cost to repair the vehicle was significantly higher than it had twice previously determined. State Farm declared the vehicle to be a total loss. Carrie was paid the sum of $10,300.00 by State Farm, and she signed a release of the vehicle to State Farm.[1] American Coachworks advised State Farm that its charges up to that date totaled $1,639.90. This amount comprised the following: $220.00 for towing; $300.00 for disassembly; *681 $754.90 for ordered parts; and $365.00 for storage. State Farm refused to pay the charges for parts or the disassembly fee. American Coachworks refused to release the car.
The instant litigation ensued. Carrie and State Farm sued American Coachworks alleging: the disputed charges were unjustified; American Coachworks' refusal to release possession of the vehicle constituted a tortious conversion; and its actions were intentional and in bad faith. American Coachworks responded with a reconventional demand, in which it claimed that Carrie and State Farm had breached the contract to repair. It sought towing and related fees, parts and labor, storage fees, and attorney fees. Following a two-day bench trial, the trial court rendered judgment, as follows: in favor of State Farm in the sum of $800.00, representing the depreciation in value of the vehicle; in favor of Carrie Whitehead and State Farm in the amount of $5,000.00, plus legal interest in general damages for the loss of enjoyment and use of the vehicle, mental anguish, and inconvenience; a release of State Farm's sequestration bond and an order that the vehicle be placed in State Farm's immediate possession; an award of attorney fees in the amount of $7,500.00 against American Coachworks; a dismissal of American Coachworks' reconventional demand; and an order that American Coachworks pay all costs.

DISCUSSION
The underlying issue that penetrates the heart of this case is whether American Coachworks was authorized to order parts for repairs on July 22, when it sent its deficiency notice. Most of the facts are undisputed; however, the parties' recollections of their verbal understandings differed on the subject of authority to initiate the repair process. In reasons for judgment, the trial court found the Whiteheads to be "credible and consistent." Carrie's father, Randall Lee Whitehead, testified that he never authorized Ann Spink at American Coachworks to order parts or commence any repairs. He stated that at "some point in time[,]" he authorized American Coachworks to do a "tear down" estimate on the vehicle. He also stated that he agreed with Ann Spinks' suggestion to "put the vehicle on the rack and check for damages and that would give ... evidence to State Farm that the vehicle was much more damaged [than] they thought ... with the first estimate." Mrs. Whitehead stated that she had wanted to see the vehicle after American Coachworks had disassembled it; however, she did not authorize any repairs to the vehicle because she wanted it totaled.
Deference is granted by reviewing courts to findings that are based on credibility determinations. In circumstances involving conflict in testimony, "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In light of the conflicting proof, we cannot say that the trial court's credibility call was clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).
The trial court also considered the standard operating procedures between repair companies and insurers in its determination of whether the repairs had been authorized. Ronnie Viverata testified as an expert in body shop management on behalf of Carrie and State Farm. American Coachworks attempted to put Peter Bartlett on the witness stand to testify as *682 an expert in industry procedures.[2] Mr. Bartlett had been listed in the pre-trial order as a "may call" expert witness. The court refused to allow Mr. Bartlett's testimony because John and Ann Spinks were scheduled to testify as experts in the same general field. In this regard, we find that the court abused its discretion. The Spinks were not independent witnesses because they owned American Coachworks. Thus, the court deprived American Coachworks of the presentation of an independent witness to rebut the testimony presented by State Farm's independent witness, Mr. Viverata.
The testimony by the Spinks and Mr. Bartlett demonstrated that State Farm's letter to Carrie, which had been sent after its inspection, charted the course for repairs. State Farm's estimated figure was very low, and State Farm expressly advised Carrie to authorize the repairs. It was undisputed that insurance companies discourage body shops from delays in repairing vehicles once they are in the shop to avoid mounting storage fees. The fact that the vehicle was retained at the shop for an extensive period of time logically implies that any repairs were to be performed at American Coachworks.
Given this scenario, the trial court manifestly erred in finding that American Coachworks acted in a fraudulent way or in bad faith. The existence of fraud is a question of fact. Coffey v. Block, 99-1221, p. 7 (La.App. 1 Cir. 6/23/00), 762 So.2d 1181, 1186, writ denied, 2000-2226 (La.10/27/00), 772 So.2d 651. Fraud involves a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Smith v. Roussel, XXXX-XXXX, p. 4 (La.App. 1 Cir. 6/22/01), 809 So.2d 159, 164; see La. C.C. art. 1953. Fraud cannot be predicated on mistake or negligence, no matter how gross. Fraudulent intent, which constitutes the intent to deceive, is a necessary element of fraud. Smith, XXXX-XXXX, p. 4, 809 So.2d at 164. The evidence presented fails to satisfy the requisite element of intent. Accordingly, the attorney fees awarded in the sum of $7,500.00 on the basis of the existence of fraud are reversed.
This court also reverses the $5,000.00 in general damages awarded by the court "for the loss of enjoyment and use of the vehicle, mental anguish, and inconvenience caused by the actions of American Coachworks, Inc." As was pointed out by American Coachworks, at the time that State Farm changed its mind to declare the vehicle a total loss, Carrie divested her ownership interest in the vehicle to State Farm. She did not suffer any loss of enjoyment, use of the vehicle, mental anguish or inconvenience because she was reimbursed for the full value of the car. State Farm, a corporation, is incapable of experiencing loss of enjoyment, mental anguish, and inconvenience. City of New Orleans v. Grand Lodge of Independent Order of Odd Fellows, 241 So.2d 7, 10 (La.App. 4th Cir.1970).
Two additional documents that shed light on the issue of the authorization of the ordering of the parts are the "Authorization to Repair" and the "Notice of Deficiency on Insurance Estimate" prepared by American Coachworks. In the authorization, American Coachworks states: "If the responsible insurance company does not wish to recognize the damage report prepared by this facility, *683 then this repair facility will work directly from the insurance estimate ...." Thereafter, in the notice of deficiency, American Coachworks establishes the following deadline: "Failure to respond within the two (2) day period will cause the repairs to commence in strict compliance with the original insurance estimate with the customers [sic] approval without the following items and procedures." American Coachworks mailed the letter on July 22, 1997; however, it failed to wait the two-day period to order the parts for repairs. While there is nothing wrong with American Coachworks' isolated act of "ordering" the parts in anticipation of an outcome of ultimately performing the repairs, its subsequent attempt to charge the parts to State Farm, combined with American Coachworks' refusal to return the unused parts to the distributors, constituted a failure to mitigate damages.[3]See Aisole v. Dean, 574 So.2d 1248, 1253-54 (La.1991). Accordingly, this court affirms that narrow part of the trial court judgment recognizing State Farm's assertion that it did not owe any payment for parts in order to retrieve the vehicle and denying American Coachworks' claim for reimbursement of the cost of the parts.
Review of the record, however, unequivocally establishes the necessity of disassembling the vehicle. Mr. Whitehead authorized American Coachworks to take the car apart. Mrs. Whitehead testified that it "explained some of the things that they had found as they had taken the car apart." Moreover, only after American Coachworks had disassembled the vehicle and written a detailed notice of deficiency to State Farm, was the extent of damage to the vehicle recognized by State Farm. Thus, the court erred in denying American Coachworks' request for payment of its disassembly fee of $300.00. Given State Farm's failure to pay the owed disassembly fee, American Coachworks' retention of the vehicle pursuant the repairman's privilege on automobiles, delineated in La. R.S. 9:4501 A, was justified. To this limited extent, American Coachworks' reconventional demand also has merit. The trial court's dismissal of same is reversed. American Coachworks is granted the sum of $220.00 for towing fees, a disassembly fee of $300.00, and $365.00 in storage fees. The $800.00 award to State Farm for depreciation in the value of the vehicle, between the time that State Farm attempted to gain possession of the vehicle and the execution of the sequestration order, is reversed.
Finally, American Coachworks appeals the trial court's failure to grant its motion for limited new trial. The evidence under consideration consists of a tape-recorded conversation between Ann Spinks and another State Farm adjustor. The tape recording had previously been in American Coachworks' possession, but it was not discovered until after the trial. We do not find any error in the trial court's denial of the motion. The evidence does not constitute "evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial." La. C.C.P. art. 1972. There is also no showing of an abuse of discretion by the court pursuant to La. C.C.P. art. 1973.
In sum, this court reverses the trial court judgment to permit the introduction of evidence presented by Peter Bartlett. The trial court's findings of fraud, award of attorney fees in the sum of $7,500.00, *684 general damages in the sum of $5,000.00, and depreciated value of the vehicle in the sum of $800.00 are reversed. The trial court's dismissal of American Coachworks' claims in its reconventional demand for towing fees in the sum of $220.00, $365.00 in storage fees, and $300.00 in disassembly fees is reversed; those sums are hereby awarded to American Coachworks. In all other respects, the trial court judgment is affirmed. Costs are to be divided equally such that Carrie Whitehead and State Farm Mutual Automobile Insurance Company will pay half, and American Coachworks, Inc. will pay half.
AFFIRMED, IN PART; REVERSED, IN PART; RENDERED, IN PART.
NOTES
[1] At trial, Carrie stated that when State Farm belatedly agreed to total the vehicle, she entered into a litigation agreement with State Farm, in which State Farm agreed to cover any losses that she might incur.
[2] Mr. Bartlett had worked as manager of a Cadillac/Chevrolet dealership collision center and as an automobile adjustor for Allstate Insurance Company.
[3] Ann Spinks testified that the ordered parts could have been returned to the supplier for a full reimbursement of payment.