WIENER, Circuit Judge,
concurring in part and dissenting in part.
I concur in the panel majority’s opinion to the extent that it affirms the district court’s dismissal of each of Schaumburg’s claims other than the one for negligent misrepresentation. As to that claim, I respectfully disagree with the majority’s conclusion that, as non-movant, Schaumburg presented evidence that establishes the existence of a genuine issue of material fact sufficient to defeat State Farm’s motion for summary judgment on that claim. More specifically, I do not question the well-reasoned and well-supported opinion of the panel majority that such a genuine dispute exists regarding misrepresentation; rather, I disagree that Schaumburg has presented evidence sufficient to defeat *443 summary judgment on the facet of the claim that any such misrepresentation resulted from negligence.
Even assuming arguendo that State Farm’s Vice-President of Agency for Louisiana, Timothy McFadden, misspoke concerning the requirement that agents like Schaumburg were required to sign a new contract before, they could relocate their offices following Hurricane Katrina, the panel majority’s crediting of Schaumburg’s evidence as establishing a genuine issue regarding McFadden’s negligence in making that putative misstatement might possibly hold true when viewed in a vacuum. Not so to my thinking, however, when the question of negligence is addressed in the real-world framework of (1) Schaumburg’s personal qualities and (2) the horrendous post-Katrina turmoil in which both he and State Farm’s personnel were forced to deal with myriad problems under extreme conditions of dislocation, disruption, and theretofore never-experienced confusion and difficulties of communication. I address each element of that framework in order.
Although Schaumburg was undeniably a victim of Katrina’s disruption and confusion, he was certainly better equipped by age, intelligence, business experience, and financial acumen than the great majority of the victims of the storm. The record reflects that he had been a highly successful State Farm agent for almost a quarter century, was netting in the neighborhood of $1,000,000 as an independent State Farm agent, and was otherwise a seasoned and experienced insurance entrepreneur. He was very familiar with his own contract with State Farm, the retirement provisions of that contract, and his various options regarding the change of his office locations and regaining or relinquishing his book of business, all depending on where he went post-Katrina and under what circumstances. Schaumburg was also aware and, apparently, very impressed with the special, highly favorable one-time retirement option that State Farm was offering to him and others similar situated agents to cope with their Katrina woes — an option that included, inter alia, the flexibility of declaring retirement by the end of 2005 and acquiring benefits based on pre-Katrina commissions, coupled with the right to make retirement effective at a much later date of the agent’s own choosing.
Louisiana courts evaluate negligent misrepresentation claims on a case-by-case basis, using a duty-risk analysis: “Plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached.” [1] Causation is a factual determination,[2] but determining whether the alleged harm was within the scope of the duty — the third element of the duty-risk analysis — is not:
In the duty/risk analysis, the foreseeability element of proximate cause is subsumed into the scope of the duty element and becomes part of a question of law of whether the particular risk falls within the scope (ambit of protection) of the duty. Foreseeability is not a question of fact in Louisiana.[3]
To determine foreseeability, Louisiana has “adopted the ease of association test, *444 which asks how easily the risk of harm can be associated with the rule which was breached.”[4] “Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs and such relation must be substantial in character.” [5] Specifically, the Louisiana Supreme Court has acknowledged that when the defendant expects that the plaintiff will use the information that was negligently provided, the plaintiffs resulting loss is “a foreseeable probability,” especially when use of the information “was ‘not merely one possibility among many, but the end and aim of the transaction.’ ”[6]
Assuming arguendo that State Farm owed Schaumburg a duty to provide truthful, accurate information about State Farm’s relocation policy and that State Farm breached that duty, Schaumburg still cannot establish that State Farm could have reasonably anticipated that its misrepresentation would cause Schaum-burg to incur damages.[7] First, McFadden’s alleged statement was made at a regional meeting of all State Farm agents affected by Hurricane Katrina, and not in the context of Schaumburg’s own relocation or of his own consideration of retiring. Even though Schaumburg’s decision to retire might have been one possibility among many resulting from McFadden’s statement, it was not the aim of the statement allegedly announced to all area State Farm agents at the September meeting. Ultimately, Schaumburg took McFadden’s alleged announcement out of the context in which it was made and, to his own detriment, relied on it unilaterally and without seeking further clarification or verification.
State Farm could not have foreseen the harm experienced by Schaumburg because State Farm had no way of knowing the other factors, unique to Schaumburg, that contributed to his decision to retire. Although “[i]t is well settled in Louisiana law that an intervening act does not automatically absolve a prior negligent party from liability,” an intervening act will absolve a negligent party if it itself was not “an easily foreseeable result of the [negligent party’s] conduct.”[8] Here, State Farm could not have foreseen Schaumburg’s failure to investigate the truth of the alleged misrepresentation as it applied to his individual situation. Before Hurricane Katrina, Schaumburg earned more than $1 million annually as a State Farm agent. He had worked for State Farm for more than two decades, making him a knowledgeable and sophisticated agent of the company— not to mention making him personally fa *445 miliar with State Farm executives and other State Farm agents. Yet, Schaumburg conceded in testimony that he did not make any attempt to gather further information or to verify the comments made about State Farm’s relocation policy, despite acknowledging that electing to retire was a “very significant” life decision.
Neither could State Farm have foreseen that Schaumburg would reject or discount the value of the available option of continuing to work in Metairie under his existing Agreement. Schaumburg framed the situation as, “I just knew what I wanted to do, and if I couldn’t do that, [ ] I would retire. And I did not want to be an agent in Metairie, Louisiana.” Yet he never communicated this subjective desire to anyone at State Farm; and he did have the option of staying in Metairie, which would not have involved retiring or signing a new contract. Therefore, even though State Farm arguably could have foreseen that misstatements about the relocation policy might have dissuaded some agents from relocating, it could not have foreseen that misstatements of that nature could cause Schaumburg to take the drastic step of retiring if doing so was not otherwise in his best interest.
Schaumburg also attempts to minimize the other factors that necessarily affected his decision. At the age of sixty-two, Schaumburg was nearing his expected retirement age, and the post-Katrina ENP offered advantageous benefits that might not have been comparable to those he would receive if he waited. Schaumburg also tries to discount the facts that relocating his office to a new area would involve his incurring particular costs and that reestablishing a profitable business in the post-Katrina marketplace was a risky endeavor. Schaumburg even testified that, ideally, he would have liked to go back to his original office in Chalmette, “[b]ut realizing that four months after this hurricane, September, October, November, December, it was still chaos, who knew anything about anything?” Thus, we must consider the fact that Schaumburg’s decision to retire just three years before his earliest expected retirement under the advantageous post-Katrina ENP offered gratuitously by State Farm, presented the least risky option for him personally, no matter what State Farm allegedly misstated about signing new contracts. Another example of “no good deed goes unpunished.”
At bottom, Schaumburg’s claim is based entirely on the benefit of 20/20 hindsight. State Farm, like most other businesses in the region, was in a state of flux and disarray following Hurricane Katrina. It held the Baton Rouge meeting only one month after the storm in an effort to regroup and introduce State Farm’s amended ENP. Tellingly, Schaumburg testified, “I was happy with my decision to retire, but I felt like that after I had announced my retirement and done what I did that the rules of engagement changed.” Although Schaumburg now questions his decision to retire under the post-Katrina ENP, he cannot blame State Farm’s alleged misrepresentation for his decision: State Farm could not have foreseen that Schaumburg would make such a “life-changing” decision without any further investigation of his options. And, regardless, Schaumburg’s decision was based on many competing interests, not least of which was the risk involved in relocating his office in the chaotic aftermath of Hurricane Katrina.
Therefore, even if we assume that State Farm had a duty to provide accurate relocation information to Schaumburg and, ar-guendo, that State Farm breached that duty, Schaumburg still fails to establish that State Farm could have reasonably foreseen the specific harm that Schaum-burg allegedly incurred based solely on McFadden’s general announcement at the *446 Baton Rouge meeting to all regional State Farm agents. I would hold that the undisputed evidence does not support the inference that State Farm’s alleged misrepresentation was the legal cause of Schaumburg’s damages and, therefore, that the district court’s grant of State Farm’s motion for summary judgment dismissing Schaumburg’s negligent misrepresentation should be affirmed.
Schaumburg’s fraud claim must be dismissed for the same reasons,[9] coupled with the fact that Schaumburg presents no evidence that McFadden’s announcement was made “with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.” [10] To the contrary, as noted above, Schaumburg repeatedly testified that he did not believe that State Farm wanted him to retire, only that they made a misrepresentation. I, therefore, respectfully dissent from the majority’s reversal of the district court judgment.

. Daye v. Gen. Motors Corp., 720 So.2d 654, 659 (La.1998).

. See Smith v. State, 523 So.2d 815, 822 (La. 1988) ("Causation is a question of fact.”) (citations omitted).

. Wooley v. Lucksinger, 14 So.3d 311, 429 (La.Ct.App.2008) (citing Roberts v. Benoit, 605 So.2d 1032 (La.1991); Smith v. Roussel, 809 So.2d 159 (La.Ct.App.2001)).

. Roberts, 605 So.2d at 1055. See also Fau-cheaux v. Terrebonne Consol. Gov't, 615 So.2d 289, 294 (La. 1993) ("The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner.... [T]he proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.”).

. Sinitiere v. Lavergne, 391 So.2d 821, 825-26 (La.1980).

. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1016-17 (La.1993) (quoting Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, 445 (1931)).

. See Daye, 720 So.2d at 660-61 (“A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Because we find that plaintiff has failed the first prong of the duty-risk analysis, we need not examine the remaining elements and find no liability on the part of the defendant under the theory of negligent misrepresentation.”) (internal citation omitted).

. Roberts, 605 So.2d at 1055-56 (emphasis added) (citing Hernandez v. Toney, 289 So.2d 318, 321 (La.Ct.App.1973)) (explaining that when an apartment complex manager required an unattended five-year-old to leave a fenced playground, the risk of the child getting hit by a car was easily associated with the manager's negligence, despite the negligence of the driver).

. See Wooley, 14 So.3d at 379 ("Negligent misrepresentation is essentially a less culpable version of fraud because fraud requires specific intent [to deceive].”).

. La. Civ.Code art. 1953.